IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


Diane Bastl,                              )
                                          )
            Plaintiff,                    )
                                          )
      vs.                                 )      Civil Action No.  07-106
                                          )
Citizens Bank of Pennsylvania, t/d/b/a    )
Citizens Bank, a subsidiary of Citizens   )
Financial Group, Inc., and Citizens       )
Financial Group, Inc.,                    )
                                          )
            Defendants.


AMBROSE, Chief District Judge


**OPINION
AND
ORDER OF COURT**

        Plaintiff, Diane Bastl ("Plaintiff" or "Bastl"), initiated this action against Defendants Citizens

Bank of Pennsylvania and Citizens Financial Group, Inc., alleging discriminatory treatment in

employment on the basis of age in violation of the Age Discrimination in Employment Act, 29

U.S.C. § 621, *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

("PHRA").   Pending before the Court is Defendants' Motion for Summary Judgment seeking

dismissal of Plaintiff's claims in their entirety.  (Docket No. 29).  Plaintiff opposes Defendants'

Motion.  After careful consideration of the parties' submissions and for the reasons set forth below,

Defendant's motion is granted.

## I.  INTRODUCTION

### A.  Factual Background

        Unless otherwise indicated, the following material facts are undisputed.

Defendant Citizens Bank of Pennsylvania ("Citizens") was formed in 2001 in connection with the December 2001 acquisition by Citizens Financial Group, Inc. of the retail and commercial banking operations of Mellon Bank, N.A. ("Mellon"). Plaintiff initially was hired by Mellon in 1981. At the time of the acquisition, Plaintiff was employed as an administrative assistant in the Retail Banking Department, and she continued to work in that position following the acquisition. As an administrative assistant, Plaintiff's principal duties involved providing administrative and clerical support to managers.

In the fall of 2004, Plaintiff was providing administrative support to, *inter alia*, two regional mangers, Charlotte Bullock and Ryan Kraynick. Kraynick, who started working as a Regional Manager with Citizens in March 2004, claimed that "a number of serious deficiencies" existed in Plaintiff's performance. These purported deficiencies included: ineffectiveness in dealing with other Citizens' personnel, including various branch managers and regional managers; judgment that was below standards; untimely completion of assigned projects; and inadequate organization skills. Kraynick reported these alleged deficiencies to Pam Nagy (Operations Manager of the Retail Banking Department), and also discussed them in a draft evaluation that he sent to Nagy in the fall of 2004. Defs.' App. Ex. 55. In the draft evaluation, Kraynick gave Plaintiff an overall rating of "4" ("fails to meet requirements of the position and requires more than usual supervision, standards not consistently met"). Plaintiff denies that any of these alleged performance deficiencies existed.

On October 22, 2004, a meeting was held with Plaintiff in which Kraynick, Bullock, Nagy, and Human Resources Representative Lee Blundon discussed the alleged deficiencies in Plaintiff's performance. Following the October 22, 2004 meeting, Bullock also completed a draft evaluation concerning Plaintiff in which she gave Plaintiff an overall rating of "3" ("Routinely meets requirements of the position with expected supervisory assistance. Consistently meets level demanded by business."). Defs.' App. Ex. 56. Bullock, however, rated Plaintiff a "4" in several

individual areas.  See id.  Based upon the draft performance reviews from Kraynick and Bullock, Nagy prepared an annual performance review for Plaintiff in which she gave Plaintiff an overall rating of 3.65, which translated to an overall rating of "4."   Defs.' App. Ex. 33 (Pl.'s Dep. Ex. 30A). The "Areas of Improvement" section of the performance evaluation identified several areas in which improvement in Plaintiff's performance purportedly was necessary.  See id.  On December 2, 2004, Nagy, Kraynick, Bullock, and Blundon met with Plaintiff and presented her with the performance review.

In early-2005, Bullock retired and, in February 2005, was replaced as regional manager by Reid Segar.  On June 21, 2005, Kraynick, Segar, and Blundon met with Plaintiff and provided her with a written warning regarding purported continued performance issues.  Defs.' App. Ex. 35. Citizens claims that the warning was given in accordance with the company's performance improvement policy.[1]  The June 21, 2005 warning contained a specific list of alleged deficiencies and stated that if Plaintiff did not demonstrate immediate and sustained improvement in her performance, further steps in the corrective action process could be taken.  See id.

A few weeks after receiving the written warning, Plaintiff commenced a disability leave for a gastrointestinal problem.  While out on disability leave, Plaintiff sent a letter dated August 12, 2005, to Ralph Papa, the President of Citizens Bank of Pennsylvania, in which she complained about her performance review and the written warning.  See Pl. Dep. Ex. 34.  In her letter, Plaintiff advised Papa of her receipt of the warning and responded to some of the criticisms concerning her performance which had been included in the evaluation and warning.  Plaintiff's August 12, 2005 letter eventually was forwarded to Barbara Blyth, Citizens' Director of Human Resources.  Blyth already was familiar with the performance issues being addressed with Plaintiff as a result of her

_____

[1]  A copy of Citizens' performance improvement policy is attached as Exhibit 65 to Defendants' Appendix.  Docket No. 32, Ex. 65 (Blyth Dep. Ex. 3).

role in supervising Blundon.

Blyth testified that after reviewing Plaintiff's August 12, 2005 letter, she discussed Plaintiff's circumstances with both Blundon and Nagy. Blyth also telephoned Plaintiff in early-September 2005, while Plaintiff was out on disability leave. During the phone call, Blyth offered Plaintiff a teller position as an alternative to her administrative assistant position. Blyth testified that prior to calling Plaintiff, she had discussed with Nagy whether there were any alternative positions within Citizens given the fact that it did not appear that Plaintiff's performance in the administrative assistant position was improving. According to Blyth and Nagy, it was agreed that a possible transfer to a teller position may be a way to address the situation since Plaintiff had worked as a teller earlier in her career with Mellon.

Plaintiff returned to work from disability leave on September 23, 2005. Shortly thereafter, Plaintiff advised Citizens that she would accept a teller position. Plaintiff began working in the position of Senior Teller in a Citizens branch office located in Greensburg, Pennsylvania, on October 24, 2005. Following her move to the teller position, Plaintiff's compensation was "red circled," or held, at the level she had been receiving as an administrative assistant, even though that compensation level was higher than the maximum compensation rate applicable to the senior teller position. Citizens describes Plaintiff's move to the Senior Teller position as a voluntary transfer. Plaintiff disagrees and alleges that the move was a demotion and that she had no choice but to accept the position or face termination from employment. Plaintiff was 58 years old when she began working in the teller position.

Although Citizens claims that Plaintiff had some initial difficulties in the teller position, the parties agree that Plaintiff soon was performing the duties of the position at an acceptable level. In fact, quarterly performance reviews Plaintiff received during 2006 consistently rated her as meeting the expectations of the position. In addition, on an annual performance review the

4

Greensburg branch manager completed in late-August 2006, Plaintiff received a "2" rating, i.e., "exceeds expectations." See Defs.' App. Ex. 41. Despite her positive performance reviews in the teller position, Plaintiff claims that her supervisor, Susan Krasausky, subjected her to harassment by, inter alia, failing to provide adequate training and unfairly criticizing her performance.

Plaintiff commenced a disability leave from her position as senior teller in late-January of 2007. In May 2007, the third party administrator for Citizens' short term disability plan advised Plaintiff that her receipt of short-term disability leave benefits was being discontinued because she no longer met the definition of disability under the plan. Plaintiff currently is pursuing an administrative appeal of that determination, and remains on unpaid, unapproved leave of absence from her position with Citizens.

## B. Procedural History

On or about January 5, 2006, Plaintiff filed a charge claiming age discrimination with the Equal Employment Opportunity Commission ("EEOC").[2] On or about October 31, 2006, the EEOC issued a Dismissal and Notice of Right to Sue to Plaintiff. (Docket No. 1, Ex. A). Plaintiff filed a Complaint against Defendants in this Court on January 29, 2007. (Docket No. 1). On April 9, 2007, Defendants filed their Answer to Plaintiff's Complaint. (Docket No. 4). On February 11, 2008, Defendants filed the instant Motion for Summary Judgment and supporting materials. (Docket Nos. 29-32). On March 10, 2008, Plaintiff filed a Responsive Concise Statement of Material Facts, Exhibits, and a Brief in Opposition to Defendants' Motion. (Docket Nos. 33-35). Defendants filed a Reply Brief and Response to Plaintiff's Concise Statement of Material Facts on

---

[2] The parties disagree as to whether Plaintiff's charge was also filed with the Pennsylvania Human Relations Commission ("PHRC"). See Section II.C., infra.

March 28, 2008.  (Docket Nos. 38-39).[3]  The Motion is now ripe for my review.

## II. <u>LEGAL ANALYSIS</u>

### A. <u>Standard of Review</u>

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion.  <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact.  <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987).   The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  <u>Id</u>. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322.  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of

---

[3]  The parties, with leave of court, also filed several supplements to the original summary judgment record.  <u>See</u> Docket Nos. 40-48.

affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.  Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

## B.  Age Discrimination - ADEA

Plaintiff alleges that she was demoted by Defendants, denied regular raises, and unfairly criticized because of her age (then 58) in violation of the ADEA.  Defendants allege that they are entitled to summary judgment as to Plaintiff's ADEA claim because, even assuming Plaintiff could establish a *prima facie* case of age discrimination, she cannot show that Defendants' reason was a pretext for discrimination.

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment because of such individual's age."  29 U.S.C. § 623(a).  In this case, both parties agree that I should analyze Plaintiff's claims using the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under that framework, plaintiff first must establish a *prima facie* case of discrimination.  If the plaintiff succeeds, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  If the defendant meets this minimal burden, then the plaintiff must prove, by a preponderance of the evidence, that the articulated reason was mere pretext for discrimination.  Id. at 802; Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).  Throughout this analysis, however, the burden of proving intentional discrimination rests with the plaintiff.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).

### 1. *Prima Facie* Case

To establish a *prima facie* case of age discrimination, a plaintiff must demonstrate: (1) that she is a member of the protected class; (2) that she was qualified for the position in question; (3) that she suffered an adverse employment action; and (4) that the adverse action occurred under circumstances that create an inference of discriminatory motive. See McDonnell Douglas, 411 U.S. at 802; Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).

Here, Defendants assume, for purposes of summary judgment only, that Plaintiff has established a *prima facie* case of age discrimination with respect to her claims that Citizens unfairly evaluated her performance as an administrative assistant in late 2004, placed her on a performance development plan, and issued her a written warning on June 21, 2005. Defendants argue, however, that Plaintiff cannot establish a *prima facie* case of age discrimination with respect to her alleged demotion to a senior teller position because that move was, in fact, a lateral job transfer and, therefore, was not an adverse employment action. See Defs.' Br. at 12-14. For purposes of summary judgment, I disagree with this latter point.

An adverse employment action is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Langley v. Merck & Co., 186 F. App'x 258, 260 (3d Cir. 2006) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)). Defendants are correct that "[m]inor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions." Id. In this case, however, genuine issues of material fact exist as to whether Plaintiff's move from the administrative assistant position to the senior teller job was a "lateral transfer" (as Defendants describe it) or a "demotion" (as Plaintiff claims). For example, although the parties agree that Plaintiff continued to receive the same compensation and benefits in the teller position as she did in her previous position, it also is undisputed that the senior teller position was several salary

grades lower than the administrative assistant position.  See Defs.' App., Ex. 3 (Defs.' Interr. Resp. at 9-10).  Among other things, this meant that Plaintiff was no longer eligible for salary increases because her salary already exceeded the maximum salary range for the senior teller job.  See id. Ex. 1 (Blyth Decl. ¶ 4 & Ex. B); Ex. 4 (Pl.'s Dep. at 217-18); Ex. 6 (Nagy Dep. at 79-80).  Indeed, although Plaintiff received a "2" rating (exceeds expectations) on her first (and only) annual performance review as a senior teller, she did not receive a concomitant salary increase.  See id. Ex. 1.  Accordingly, for summary judgment purposes, I find that Defendants are not entitled to judgment as a matter of law on this issue.[4]

Even assuming, however, that Plaintiff suffered an adverse employment action, her discrimination claims cannot survive summary judgment because, as set forth more fully below, Defendants have provided a legitimate, nondiscriminatory reason for their actions, and Plaintiff cannot point to any record evidence showing that this reason was a pretext for age discrimination.

### 2. Defendants' Articulated Reason

Defendants have satisfied their minimal burden of articulating a legitimate, nondiscriminatory reason for their actions, i.e., deficiencies in Plaintiff's performance as described in her 2004 performance review and in numerous other documents and testimony of record.  Defs.' Br. Supp. at 9-10.  Courts routinely have recognized performance deficiencies as a legitimate, nondiscriminatory reason for an adverse employment action.  See, e.g., Wooler v. Citizens Bank, 274 F. App'x 177, 180 (3d Cir. 2008); Silver v. Am. Inst. of Certified Pub. Accountants, 212 F. App'x 82, 85 (3d Cir. 2006) (*per curiam*).  Accordingly, the burden is on Plaintiff to offer evidence that Defendants' proffered reason is pretextual.

---

[4]  Defendants also suggest that Plaintiff voluntarily chose to move to the teller position and, for that reason as well, there was no adverse employment action.  Plaintiff however, testified that she was told by management that she had to choose between the teller position and termination of employment.  Thus, there remains a genuine issue of material fact on this question.

### 3. Pretext

"To survive summary judgment when the employer has articulated a legitimate, non-discriminatory reason for its action, the plaintiff must point to some evidence . . . from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determining cause of the employers action."  Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes, 32 F.3d at 764); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000); Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 370 (3d Cir. 2008). To discredit the employer's articulated reasons (the first method of proving pretext), the plaintiff

> need not "produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, nor produce additional evidence beyond [her] prima facie case."  Id. (citations omitted).  The plaintiff must, however, point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the proffered nondiscriminatory reason did not actually motivate the employer's action."

Simpson, 142 F.3d at 644 (quoting Fuentes, 32 F.3d at 764-65).

To show that discrimination was more likely than not a cause for the employer's action (the second method of proving pretext), "the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that" the plaintiff's age "was a motivating or determinative factor in the employment decision."  Id.  Among other things, the plaintiff may show that the employer: (1) has previously discriminated against her; (2) has discriminated against other persons within the plaintiff's protected class or within another protected class; or (3) that the employer has treated more favorably similarly situated persons not within the protected class.  Id. at 645 (citing Fuentes). The burden of proving pretext is a difficult one, Fuentes, 32 F.3d at 765; Kautz, 412 F.3d at 467, and one which Plaintiff has failed to meet in this case.

**a. Evidence Discrediting Defendants' Articulated Reason**

Plaintiff's arguments in opposition to Defendants' summary judgment motion do not meaningfully throw into question Citizens' proffered reasons for negatively evaluating her performance, placing her on written warning, and/or transferring her to a teller position.

As an initial matter, Plaintiff spends much of her brief disagreeing that her performance was deficient. For example, in one unsupported paragraph, Plaintiff states:

> The *purported* deficiencies that Bastl's supervisors point to was [*sic*] pre-textual in nature, as Bastl did not agree with their assessment, and testified specifically in her defense and was clear in describing how they fabricated allegations against her, as a result of their own lack of attentiveness to their own duties. Kraynick never bothered to determine Bastl's underlying qualifications, until after he officially criticized her. Kraynick's issues with Bastl were not reasonable.

Pl.'s Opp. Br. (Docket No. 35) at 4. Plaintiff's subjective disagreement with her supervisors' criticisms, however, simply is not evidence of pretext. See, e.g., Kautz v. Met-Pro Corp., 412 F.3d 463, 471-73 (3d Cir. 2005); Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) ("[T]he fact that an employee disagrees with an employer's evaluation [of her performance] does not prove pretext."); Fatzinger v. Lehigh Valley Hosp., 130 F. Supp. 2d 674, 679 (E.D. Pa. 2001) ("[I]t is well-established that neither a simple denial of the charges against her, nor her own rosier perception of her performance, saves Plaintiff from summary judgment.") (citing Billet).

It likewise is not evidence of pretext that Plaintiff's supervisors may have been wrong or mistaken about Plaintiff. See, e.g., Fuentes, 32 F.3d at 765 (the issue is not whether the employer is wise, shrewd, prudent or competent, but whether the employer acted with a discriminatory motive); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988) ("Our inquiry must concern pretext, and is not an independent assessment of how we might evaluate and treat a loyal employee."). As the Court of Appeals for the Third Circuit has explained, the court:

> "do[es] not sit as a super-personnel department that reexamines an entity's business decisions. . . . [N]o matter how high-handed [a company's] decisional process, no

matter how mistaken the firm's managers, the [civil rights laws] do[] not interfere. Rather, [the pretext] inquiry is limited to whether the employer gave an honest explanation of its behavior."

Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 332 (3d Cir. 1995) (quoting McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 373 (7th Cir. 1992)); see also Logan v. Countrywide Home Loans, Civil Action No. 04-5974, 2007 WL 879010, at *6 (E.D. Pa. Mar. 15, 2007) ("An employer is entitled to be hasty, ill-informed, mercurial, or just wrong in its employment decisions; what an employer may not do is base employment decisions on . . . [a] protected criterion . . . in contravention of civil rights law.").

As further "evidence" that Ryan Kraynick and Reid Segar's evaluations of her performance are unworthy of credence, Plaintiff points to the fact that she previously had received only favorable performance reviews and that the other regional manager to whom she reported in 2004, Charlotte Bullock, evaluated her more favorably than Kraynick. Even if true, however, these facts do not establish pretext. As an initial matter, how Plaintiff's prior managers or supervisors may have rated her performance is irrelevant to the issue of whether the performance evaluations and expectations of Kraynick and Segar amount to a pretext for age discrimination. See, e.g., Peters v. Lincoln Elec. Co., 285 F.3d 456, 474-75 (6th Cir. 2002).[5] Moreover, although Bullock rated Plaintiff one rating level higher than Kraynick on her 2004 evaluation, Bullock's reviews of Plaintiff's performance were not devoid of criticism, and many of her negative comments echoed concerns similar to those voiced by Kraynick and Segar. See, e.g., Defs.' App. Ex. 63 (Blyth Dep. Ex 2). Indeed, in her draft evaluation, Bullock rated Plaintiff a "4" (needing improvement) in several individual areas, including effectiveness in dealing with others, initiative, and adaptability. See id. Thus, although not identical, Bullock's evaluation of Plaintiff's performance is not so inconsistent with Kraynick and

---

[5] This is especially true in light of the fact that the bank was under new ownership in 2004 and that Citizens took a different approach to banking than Mellon.

Segar's criticisms to create an issue of pretext.

In opposition to Defendants' summary judgment motion, Plaintiff also attaches the affidavits of two other long-term bank employees – Mary Beth Heaverley, a Banking Sales Specialist, and Geraldine Holts, a former branch manager at Citizens' Fourth and Main branch. See Pl.'s App. (Docket No. 34), Exs. 8, 9. Heaverley and Holts, using almost identical language, state that they knew Plaintiff to be "an extremely hard-working individual who placed loyalty and integrity above everything," and that she was "conscientious, thorough, and always strived for success." They also opine that Plaintiff was "well liked" by others in the bank. Id. Therefore, according to the affidavits, any statements "by management that differ" from these representations" are clearly inaccurate and intended only to harass and cause grief and anxiety" to Plaintiff. Id. The Heaverley and Holts affidavits are irrelevant for numerous reasons. Among other things, Heaverley and Holts were not decisionmakers in this case and there is no evidence that either of them ever supervised Plaintiff in the administrative assistant position or were responsible for reviewing her performance. The affidavits also make no attempt to establish personal knowledge or competency to testify concerning decisions affecting employees in other branches or departments. See Fed. R. Civ. P. 56(e). The subjective opinions and conclusory statements of two colleagues with no supervisory or decision-making authority over Plaintiff simply are not evidence of pretext.

In short, Plaintiff has failed to point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Citizens' proffered legitimate reasons such that "a reasonable factfinder could rationally find them unworthy of credence." Fuentes, 32 F.3d at 764-65. Rather, Plaintiff's evidence in this regard amounts to little more than conclusory statements and subjective beliefs. As set forth above, such "evidence" is insufficient to show pretext.

**b. Evidence of an Invidious Discriminatory Reason**

Plaintiff also has failed to show that age discrimination was more likely than not a cause for

Defendants' actions (the second method of proving pretext). The primary "evidence" to which Plaintiff points on this issue is an e-mail attachment she claims was attached to an e-mail from Pam Nagy to Reid Segar listing the names of branch managers in Segar's region along with various personnel information regarding those employees, including the employees' ages and length of service. See Defs.' App. Ex. 54. During her tenure as Segar's administrative assistant, Plaintiff viewed and printed the document and later produced it to Defendants in discovery without providing the e-mail to which it originally was attached. Not having the benefit of the original e-mail, Ms. Nagy testified in her deposition that the attachment was similar to documents she sometimes prepared in connection with discussions concerning succession planning.[6] Subsequently, Defendants discovered the original e-mail in the course of separate litigation[7] and amended their summary judgment papers to reflect that the attachment likely was not a succession planning document, but a document prepared in connection with efforts to address performance issues in Segar's branch office region. See Docket No. 43. Plaintiff argues that, in any event, the document is evidence that Citizens was actively attempting to push its older workforce out the door.

I disagree. Regardless of whether the e-mail attachment at issue is a succession planning document or a document concerning performance issues, it is not evidence of pretext in this case. Plaintiff was not a branch manager, and her name does not appear on the list of branch managers. No reasonable fact-finder could infer that Citizens discriminated against Plaintiff because of her age simply based on a list of branch managers which happens to include age and length of service.

---

[6] Barbara Blyth, Citizens' Director of Human Resources, explained in her deposition that succession planning was a process in which Citizens tried to anticipate when branch managers might be separating from employment as a means of insuring that other persons were available to staff openings if and when they occurred. Defs.' App. Ex. 7 (Blyth Dep. at 130-32).

[7] That action, captioned Senko et al. v. Citizens Bank of Pa., Inc. et al., Civ. A. No. 07-552, is currently pending before another judge in this district. On May 9, 2007, I denied Plaintiff's motion to consolidate the instant case with the Senko action. See Docket No. 11.

In addition, Plaintiff has not provided sufficient evidence concerning the context of the document or the branch managers named therein for a reasonable fact-finder to conclude that the list is in any way suggestive of age discrimination against those branch managers. For this reason as well, the list is not evidence that Defendants' actions were pretext for age discrimination against Plaintiff.

Plaintiff also has provided a short affidavit from Linda Behanna, a long-term Mellon/Citizens employee who last worked as a branch manager at the bank's Monessen branch. Pl.'s App., Ex. 24. In her affidavit, Behanna opines that

> [w]ith the acquisition of Mellon by Citizens, it was noticed by Citizens and obvious that many of the female employees of Mellon were older, that is over forty (40). Citizens Bank took a proactive approach with regard to the older Mellon employees. *It is believed by me* that Citizens wanted to phase out the older employees and replace them with younger employees. In fact, a number of the branch managers either retired or were terminated and replaced with younger personnel. Based on these considerations, *it is my belief* that there was age discrimination with the acquisition by Citizens. This created an atmosphere of stress with no respect given the older employees.

Id. (emphasis added). Behanna's affidavit is not evidence of pretext for multiple reasons. Among other things, the record evidence shows that Behanna's job as a branch manager related to matters involving only the Monessen branch (where Plaintiff never worked), and her affidavit makes no attempt to establish personal knowledge or competency to testify concerning decisions affecting employees in other branches or departments. See Defs.' Reply Br. (Docket No. 39), Ex. A (Blyth Decl.); Fed. R. Civ. P. 56(e). In addition, Behanna's subjective opinions and beliefs regarding age discrimination in decisions affecting unidentified branch managers is not evidence of age discrimination related to Plaintiff's performance as an administrative assistant. See, e.g., Jalil v. Advel Corp., 873 F.2d 701, 707 (3d Cir. 1989) (conclusory allegations of discrimination are insufficient to defeat summary judgment).

Similarly, Plaintiff's repeated broad statements that Ryan Kraynick was "sent in" by Craig Campbell to "remove the older workforce"; that Campbell developed and fostered a "young boys

club" to implement his unlawful policies; and that she was "precluded from demonstrating any significant improvement in the eyes of Kraynick and Segar, as they were carrying out the age discrimination policy set forth by Campbell," are not evidence of pretext because Plaintiff does not point to any record evidence of such a policy other than her own deposition testimony. Again, neither Plaintiff's unsupported and conclusory statements nor her subjective opinion that her managers were carrying out an age discrimination policy sent down from upper management are evidence of age discrimination. See Jalil, 873 F.2d at 707.

After the parties submitted their summary judgment papers, Plaintiff filed several motions to supplement the summary judgment record with after-discovered "evidence." None of this additional evidence, however, is sufficient to sustain Plaintiff's ADEA claim. First, Plaintiff points to a string of e-mails dated October 31 and November 1, 2005 to and/or from Pam Nagy, Barb Blyth, and Craig Campbell regarding Plaintiff's employment status during that time period. Docket No. 40, Supp. Ex. 1. In response to e-mails from Campbell and Nagy inquiring about Plaintiff's employment situation at the time, Blyth indicated that she had suggested moving Plaintiff to a teller position because it "significantly lowered our risk with a long-term employee, female, over-40, who had been rated 2 and 3 by previous management; who was now being managed by two young, under-40 males, who said she couldn't do her job." Id. Blyth also indicated that Citizens had "moved folks into other positions, for similar circumstances." Id. I disagree with Plaintiff that this e-mail string is "self-explanatory" evidence that Citizens "consider[s] age in its decision making process." See Docket No. 40. Nothing in the e-mails at issue suggests that Plaintiff's age was a negative factor in the decision to offer Plaintiff a teller position. If anything, the e-mail supports Defendants' position that Citizens made an effort to keep Plaintiff within the organization despite her performance problems as an administrative assistant. The mere fact that Citizens' human

resources director was conscious of the fact that Plaintiff was a member of a protected class is not evidence that age was a negative factor in the decision-making process.[8]

Second, Plaintiff supplemented the record with a series of e-mails dated in 2005 and a chart summarizing certain corrective action taken by Citizens with respect to four branch managers in Reid Segar's region. <u>See</u> Docket Nos. 45-48. Plaintiff's counsel received the documents as part of discovery in the <u>Senko</u> case, but claims they are relevant here because they show that age was a factor in Citizens' decision-making process and that Citizens' corrective action process was a sham. <u>See</u> <u>supra</u> n.7. I disagree. Once again, these are documents that concern performance issues and employment decisions involving persons who are not parties to this case and who were employed in positions totally different than the administrative assistant position Plaintiff held. Moreover, Plaintiff has not proffered any additional testimony or evidence concerning the documents' context or the details relating to the employment decisions involving the persons mentioned therein. For all of these reasons, I find that the supplementary documents do not create a genuine issue of fact with respect to pretext in this case.

In short, Plaintiff has failed point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that Citizens' corrective action process was a sham or that Plaintiff's age otherwise was a motivating or determinative factor in Citizens' employment decisions. Because there are no genuine issues of material fact on the pretext issue with respect to Plaintiff's age discrimination claim involving her administrative assistant position, Defendants' Motion for Summary Judgment on that claim is granted.

### 4. Plaintiff's Harassment Claim

---

[8] I also note that, as of date of the October 31/November 1 2005 e-mail string, Citizens' human resources department was aware that Plaintiff had accused Citizens of age discrimination. <u>See</u> Docket No. 41, Ex. A.

Plaintiff also argues that Defendants unlawfully harassed and humiliated her on the basis of her age after she moved to the teller position. In particular, she contends that her supervisor in the teller position, Susan Krasausky, failed to provide her with adequate training and unfairly criticized her performance. See Complaint ¶ 23; Pl.'s Opp. Br. at 7-8, 11-12. This argument is without merit. As an initial matter, it is undisputed that Plaintiff received favorable evaluations of her job performance in the teller position before she went out on disability leave, including a "2" rating (exceeds expectations) from management on her 2006 annual performance evaluation. See Pl.'s Resp. St. Mat. Facts ¶ 19. In addition, the alleged incidents Plaintiff describes, even when viewed in the light most favorable to Plaintiff, do not rise to the level of actionable harassment.[9] Even if they did, her claim still fails because there is absolutely no evidence that any of the alleged incidents of harassment were related in any way to Plaintiff's age. For all of these reasons, Defendants' motion for summary judgment as to Plaintiff's harassment claim is granted.

### C. Age Discrimination - PHRA

Plaintiff also alleges age discrimination in violation of the PHRA. Defendants argue that Plaintiff's PHRA claim fails because she never filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"). Under the PHRA, a plaintiff must file a complaint with the PHRC within 180 days of the date of the alleged discriminatory act. 43 Pa. Cons. Stat. Ann. § 959(h); Woodson v. Scott Paper Co., 109 F.3d 913, 926 (3d Cir. 1997). Filing a federal charge with the EEOC does not satisfy this requirement unless the plaintiff requests that the EEOC charge be dual-filed with the PHRC and that the EEOC forwarded the charge to the PHRC prior to the expiration of the 180-day filing period. Id. at 927. Here, Defendants argue that the only administrative claim

---

[9] Among other things, Plaintiff complains that Krasausky made her work at the drive-through window in the cold; criticized her in front of other employees; and asked her to order office supplies in between handling customers. See, e.g., Pl. Dep. at 206-210, 251-256.

Plaintiff filed was her August 9, 2006 EEOC charge. See Defs.' App., Ex. 20. Defendants maintain that the EEOC charge was not dual-filed or forwarded to the PHRC, and that Plaintiff has not otherwise produced any evidence that she ever filed a complaint with the PHRC. Defs.' Br. at 18-19.

Plaintiff's only response to Defendants' argument consists of three short sentences in her responsive statement of material facts and her opposition brief stating that her EEOC charge was dual-filed with the PHRC. Pl.'s Resp. Stat. Material Facts ¶ 12; Pl.'s Br. Opp. at 12. The only "evidence" Plaintiff cites in support of this statement consists of a letter from the PHRC to the EEOC transferring her case to the EEOC; a letter from the EEOC to Plaintiff regarding her appointment to file an EEOC charge; a letter from the EEOC to Plaintiff asking her to review and correct a draft EEOC charge; and the fact that the PHRC assigned Plaintiff a case number (PHRC Case No. 200502312). Pl.'s Resp. Stat. Material Facts ¶ 12. None of these documents, however, demonstrate that Plaintiff ever filed a Complaint with the PHRC within the meaning of the PHRA. To the contrary, the EEOC and/or PHRC documents of record indicate that Plaintiff submitted a questionnaire to the PHRC in or around October 2005. Defs.' App. Exs. 12, 13. Subsequently, in a letter dated March 10, 2006, the PHRC enclosed a draft complaint for Plaintiff's review and signature. The letter noted that if Plaintiff did not return the complaint within ten days, the PHRC would "assume that [Plaintiff was] no longer interested in pursuing this matter." Id. Ex. 14. Although the March 10, 2006 letter noted that after Plaintiff returned the signed complaint, her questionnaire would be used as the initial complaint and both complaints would be served on Defendants, there is no evidence that Plaintiff ever sent back a signed complaint to the PHRC. Rather, the correspondence indicates that Plaintiff's counsel requested that the PHRC transfer the matter to the EEOC. Id. Ex. 15. There is no evidence that the EEOC charge Plaintiff subsequently filed was ever dual filed with the PHRC.

Even if there were a genuine issue of material fact as to whether Plaintiff had properly filed a complaint with the PHRC, her PHRA claim would fail on the merits for the same reasons discussed in Section II.B., <u>supra</u>.  <u>See</u> <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 105 (3d Cir. 1996) (analysis of ADEA claim applies equally to age discrimination claim under the PHRA). For this reason as well, Defendants motion for summary judgment as to Plaintiff's PHRA claim is granted.

### III.  <u>CONCLUSION</u>

For all of these reasons, Defendants' Motion for Summary Judgment is granted in its entirety.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Diane Bastl,                                    )
                                                )
                    Plaintiff,                  )
                                                )
        vs.                                     )     Civil Action No.  07-106
                                                )
Citizens Bank of Pennsylvania, t/d/b/a          )
Citizens Bank, a subsidiary of Citizens         )
Financial Group, Inc., and Citizens             )
Financial Group, Inc.,                          )
                                                )
                    Defendants.                 )


AMBROSE, Chief District Judge


# ORDER OF COURT

AND NOW, this 12th day of September, 2008, after careful consideration of the submissions

of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered

that Defendants' Motion for Summary Judgment (Docket No. 29) is GRANTED in its entirety and

that Plaintiff's Complaint is dismissed with prejudice.


                                    BY THE COURT:


                                    /s/ Donetta W. Ambrose
                                    Donetta W. Ambrose
                                    Chief U.S. District Judge